IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SHARON DAWN HART, )
)
    Plaintiff, )
)
v. ) Civil Action No. 16-1513
)
COMMISSIONER OF )
SOCIAL SECURITY, )
)
    Defendant. )

O R D E R

AND NOW, this 19ʰ day of March, 2018, upon consideration of the parties' cross motions for summary judgment, the Court, upon review of the Commissioner of Social Security's final decision, denying Plaintiff's claim for Disability Insurance Benefits ("DIB") under Subchapter II of the Social Security Act, 42 U.S.C. § 401 et seq., finds that the Commissioner's findings are supported by substantial evidence and, accordingly, affirms. See 42 U.S.C. § 405(g); Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs., 48 F.3d 114, 117 (3d Cir. 1995); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom., 507 U.S. 924 (1993); Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); see also Berry v. Sullivan, 738 F. Supp. 942, 944 (W.D. Pa. 1990) (if supported by substantial evidence, the Commissioner's decision must be affirmed, as a federal court may neither reweigh the evidence, nor reverse, merely because it would have decided the claim differently) (citing Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981)).[1]

---

[1]     The crux of Plaintiff's argument is that the Administrative Law Judge ("ALJ") erred in failing to consult a medical advisor to determine whether the onset date for the allegedly

1

disabling impairments caused by her conditions, particularly her fibromyalgia, occurred on or before December 31, 2011, the date her DIB insured status expired. She argues that this failure is contrary to the provisions of Social Security Ruling ("SSR") 83-20, 1983 WL 31249 (S.S.A.), raising several issues which, she contends, demonstrate the need for such an advisor. Nonetheless. the Court finds that the ALJ was not required to seek the assistance of a medical advisor and that substantial evidence supports the ALJ's finding that Plaintiff is not disabled.

Plaintiff alleged a disability onset date of January 1, 2010, and there is no dispute that Plaintiff's insured status ended on December 31, 2011. Therefore, to be eligible for DIB, Plaintiff "'must show that [she] was insured under the program at the time of onset of [her] disability.'" Kelley v. Barnhart, 138 Fed. Appx. 505, 507 (3d Cir. 2005) (quoting Kane v. Heckler, 776 F.2d 1130, 1131 n.1 (3d Cir. 1985)). Although the ALJ made no formal finding that Plaintiff was disabled at any time, he did suggest that he would have found Plaintiff to be disabled as of the date of his decision, February 6, 2015, but not as of the end of her DIB coverage period approximately four years earlier. Accordingly, Plaintiff is correct that the issue of the onset date of her conditions and limitations was a substantial one in this case.

While SSR 83-20 does require an ALJ to consult a medical advisor to determine the onset date under certain circumstances, such circumstances are quite limited. The Third Circuit Court of Appeals, in Walton v. Halter, 243 F.3d 703 (3d Cir. 2001), held that the use of a medical advisor was mandatory pursuant to SSR 83-20 in a case where the alleged onset date was nearly 30 years earlier and where the alleged impairment was a slowly progressive one and adequate medical records for the most relevant period were not available. The court further held that the medical evidence overwhelmingly suggested the onset date argued by the claimant and that there was no legitimate medical basis to the ALJ's finding as to the onset date. Since Walton, the Third Circuit has confirmed that the need to seek out the services of a medical advisor is limited to situations where the underlying disease is progressive and difficult to diagnose, where the alleged onset date is far in the past, and where contemporaneous medical records are sparse or conflicting. See Bailey v. Comm'r of Soc. Sec., 354 Fed. Appx. 613, 618 (3d Cir. 2009); Kelley v. Barnhart, 138 Fed. Appx. at 509; Ballardo v. Barnhart, 68 Fed. Appx. 337, 339 (3d Cir. 2003). Here, unlike the case in Walton, the alleged onset date is not remote, and there is considerable medical evidence regarding Plaintiff's condition prior to December 31, 2011, the end of her insured period. As a general matter, then, consultation with a medical advisor would not be warranted in this case.

Plaintiff nonetheless contends that there is sufficient evidence in the record to support an onset date prior to December of 2011, and that the ALJ improperly considered such evidence, demonstrating the need for an advisor to determine her actual onset date. She argues, for instance, that the opinions of the non-examining reviewers (R. 72-79) were not sufficient to support the ALJ's onset finding because these reviewers did not have access to the entire record. Generally speaking there is always a time and evidence lapse between the reviewing agents' report and the ALJ hearing and decision. See Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). Plaintiff contends, however, that these reviewing agents had insufficient evidence to opine as to the progression of her condition, and therefore that they do not support the ALJ's finding that onset of any disabling conditions occurred after December 31, 2011. The

Court notes, however, that the opinions were both rendered after the end of Plaintiff's insured period, albeit without the benefit of evidence later added to the record. More importantly, though, the ALJ, while he gave "some weight" to these opinions (R. 22-23), did not rely on them specifically in determining whether the onset date occurred during the insured period.

Plaintiff further contends that the record contains evidence from before the end of the insured period that she met the requirements of Listing 1.04A, 20 C.F.R. Part 404, Subpart P, Appendix 1, at Step Three of the sequential analysis. She argues that evidence from July and August of 2010, primarily from her chiropractor, Michael C. Pangonis, D.C., demonstrates that she facially met the Listing, pertaining to disorders of the spine, prior to her date last insured. She further contends that the ALJ's discussion as to whether she met this listing during her insured period was insufficient and that a medical advisor was therefore needed. The Court, however, disagrees that the record contained sufficient evidence to establish, or even suggest, that Plaintiff met Listing 1.04 or that a medical advisor was needed to render such an opinion.

Listing 1.04 provides that to meet the listing for disorders of the spine, it must be established that Plaintiff experiences such a disorder, such as a herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, or vertebral fracture, resulting in compromise of a nerve root (including the cauda equina) or the spinal cord, and that she meets the criteria of one of three additional subsections. Plaintiff relies on subsection A, which requires:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

Listing 1.04A, 20 C.F.R. Part 404, Subpart P, Appendix 1. Moreover, all listings under 1.00, including 1.04A, require evidence of the inability to ambulate effectively or to perform fine and gross movements effectively. See Leibig v. Barnhart, 243 Fed. Appx. 699, 702 (3d Cir. 2007); Phillips v. Colvin, No. 1:16-cv-1033, 2017 WL 3820973, at *5 (M.D. Pa. Aug. 16, 2017); Listing 1.00(B)(2)(a). The ALJ, in his decision, did discuss whether Plaintiff met these criteria but found that she did not. Despite Plaintiff's arguments to the contrary, the Court agrees.

Plaintiff relies very heavily on tests performed by her chiropractor, Dr. Pangonis, on August 21, 2010. However, the record demonstrates merely that a number of tests were performed on that date, roughly half with positive results and half with negative results. (R. 650). Dr. Pangonis did not provide any interpretation or analysis of these test results, nor did he make a finding that Plaintiff was experiencing nerve root compression. More importantly, though, there is no evidence at all of the type of inability to ambulate or perform fine and gross movements required by Listing 1.00(B)(2)(a). Indeed, the record contains findings that Plaintiff demonstrated normal gait even several years later. (R. 663, 665). Further, as a chiropractor, Dr. Pangonis is not considered to be an acceptable medical source, and therefore, his findings cannot

3

themselves establish that Plaintiff met a listing, but could only help establish the severity of a diagnosis from a medically acceptable source. See SSR 06-3p, 2006 WL 2329939 (S.S.A.), at *2; Rogalska v. Berryhill, No. 15-C-5430, 2017 WL 1178515, at *4 (N.D. Ill. Mar. 30, 2017); Karpinski v. Astrue, No. 5:11-cv-66, 2011 WL 6941391, at *14 (N.D. W.V. Nov. 14, 2011) (ALJ not required to consider the opinion of a chiropractor in determining whether a claimant met Listing 1.04A). Plaintiff points to no diagnosis from a medically acceptable source from the relevant time period that would establish that she met Listing 1.04. Under these circumstances, it did not require a medical advisor to make this determination, just a close analysis of the record and a reading of the applicable listings.

Finally, Plaintiff argues that the record contains evidence that, although her fibromyalgia was diagnosed after her last date insured, her condition, symptoms, and limitations existed prior to that date. Among this evidence is the February 13, 2014 opinion of her treating primary care physician, Jeffry Wahl, M.D. (R. 668-73). Plaintiff asserts that the ALJ inadequately assessed this evidence, again showing the need for a medical advisor. Again, though, the Court disagrees.

Plaintiff points out that Dr. Wahl's opinion expressly states that she began suffering from her symptoms, conditions, and limitations in 2010. (R. 673). However, the ALJ shows perfect awareness of this fact and, indeed, emphasizes that evidence more contemporaneous with Dr. Wahl's 2014 opinion did not support such an opinion, such as the fact that she was not referred to a neurologist until 2014 and that an MRI from 2013 still showed only mild radiculopathy, despite the progressive nature of Plaintiff's condition. (R. 22, 631). Indeed, Dr. Wahl himself cited to the 2013 MRI in support of his opinion and offered no explanation as to how it demonstrated anything about Plaintiff's condition three years earlier. The ALJ further noted that Dr. Wahl did not document any complaints of chronic pain during the relevant time period. (R. 20, 22, 564-66). The ALJ also pointed out that Dr. Wahl suggested different onset dates in different parts of the record. (22, 673, 737). While, as Plaintiff argues, none of these factors definitely disprove Dr. Wahl's opinion, together they do provide substantial evidence for the ALJ's decision to give it little weight.

Likewise, while Plaintiff points to signs and symptoms of fibromyalgia she exhibited before last date insured, she provides no basis for finding that her condition was disabling at that time. As noted above, it is not disputed that Plaintiff's condition is progressive (R. 760, 486), and the issue is whether her fibromyalgia had progressed to the point of being disabling by December 31, 2011. The record undoubtedly does not show that Plaintiff was symptom-free at that time. It does, however, contain sufficient evidence from both before and after that date for the ALJ to determine whether the onset of disability preceded that date without the assistance of a medical advisor. See Tolfa v. Colvin, No. 13-624, 2014 WL 12537091 (W.D. Pa. Sept. 16, 2014) ("[B]ecause the ALJ had access to medical records from the relevant time period, he was not required to call upon a medical advisor pursuant to SSR 83-20."). The Court finds that substantial evidence supports his decision.

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 10) is DENIED and that Defendant's Motion for Summary Judgment (Doc. No. 12) is GRANTED.

s/ Alan N. Bloch<br>United States District Judge

ecf:     Counsel of record